1
2
3
4
5                    **UNITED STATES DISTRICT COURT**

6                        **DISTRICT OF NEVADA**

7

8    JEREMY B. KELLY,

9              Petitioner,                    Case No. 3:03-CV-0649-JCM-RAM

10   vs.

11   MICHAEL BUDGE, *et al.*,                           **ORDER**

12   _____Respondents.

13   _____

14            This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, by

15   Jeremy B. Kelly, a Nevada prisoner.  Kelly was tried and convicted for the robbery and murder of

16   Terry Dixon.  Kelly, along with Sean Dixon, Lamar Alexander, De Quincy Taylor and Chuck

17   Dunhame had planned to rob Terry Dixon, who was killed during a scuffle in the course of the

18   robbery.  Sean Dixon, Kelly, and Alexander were later charged in the murder and robbery.  Kelly

19   went to trial and was convicted on all counts.  Dixon and Alexander ultimately entered guilty pleas.

20       **I.     Procedural History**

21            Petitioner was convicted in Nevada's Eighth Judicial District Court, in 1999, of

22   murder with the use of a deadly weapon, burglary while in possession of a firearm, and conspiracy to

23   commit murder and robbery with the use of a deadly weapon, and was sentenced to two consecutive

24   life terms with the possibility of parole in addition to several concurrent terms of imprisonment.  *See*

25

26

1   Exhibit 97.[1]  Petitioner appealed from the conviction, raising two claims for relief. Exhibit 94, 104.

2   The Nevada Supreme Court affirmed the conviction on August 10, 2001.  Exhibit 127.  Petitioner

3   filed a pro per state post conviction petition, challenging his conviction on the bases of alleged

4   ineffective assistance of counsel (Grounds 1 and 7) and alleged violation of his due process rights

5   (Grounds 2-6).  *See* Exhibit 149.  The state district court denied the petition.  Exhibit 137.  The

6   Nevada Supreme Court affirmed the lower court with a limited remand to correct the form of the

7   judgment of conviction.   Exhibit 159.

8           Petitioner submitted his federal petition for a writ of habeas corpus in this action on

9   November 21, 2003 (docket #6).  Counsel was appointed (docket #4), and a first amended petition

10  was filed on October 13, 2004  (docket #18).  A second amended petition was filed upon order of the

11  Court (docket #31).  Respondents filed a motion to dismiss (docket #32), and following full briefing,

12  the Court found that part of Ground 5 and all of Ground 6 were unexhausted.  *Id.*  However, upon

13  reconsideration, the Court concluded that Ground 6 was, in fact, exhausted.  Petitioner abandoned

14  the unexhausted part of Ground 5 and the matter is now before the Court on respondents' Answer

15  and petitioner's Reply.  The Court therefore addresses the merits of the petition.

16          Petitioner raises six grounds for relief in his Second Amended Petition.  His claims

17  are as follows:

18      1.   Kelly was denied his right to liberty under the Fourteenth Amendment to the
             United States Constitution when, after two days of trial, the presiding judge
19           left the bench because of sickness and the substitute judge proceeded with
             and finished the trial without completely reviewing the existing trial record.
20
21      2.   Kelly was denied his right to the effective assistance of counsel under the
             Sixth and Fourteenth Amendments to the United States Constitution when
22           counsel failed to argue on appeal that since there was insufficient evidence to
             prove that Kelly had the ability to control the pistol that killed Terry Dixon,
23           there was insufficient evidence to enhance Kelly's sentence for committing
             the crime while using a deadly weapon.
24
        _____
25          [1]  The numbered exhibits referred to in this Order were filed by petitioner in support of his
        amended petition.  The exhibits are found at docket entries 19-26 and 36 and 37.
26
                                                2

3.   Kelly was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel when counsel failed to properly investigate the case.

4.   Kelly was denied his Fifth, Sixth, and Fourteenth Amendment rights when the trial court denied his motion to suppress statements that were obtained in violation of *Miranda*.

5.   Kelly was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when

   (a)   counsel failed to investigate his mental status in a timely manner. (ABANDONED).

   (b)   counsel failed to present any witnesses or other evidence at Kelly's sentencing hearing.

6.   Kelly was denied his right to effective assistance of counsel when counsel failed to argue on appeal that he was denied his right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution because the prosecutor presented two factually conflicting theories of prosecution.

## II.   Federal Habeas Corpus Standards

28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>    (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).  These standards of review "reflect the ... general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court."  *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999).

3

1    Furthermore, "a determination of a factual issue made by a State court shall be

2    presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of

3    correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1).

4    **III.  Analysis**

5        **A.  Petitioner's Due Process Claims**

6            **Ground One.**

7    Kelly's trial commenced on December 13, 1999.  Then, after two days which

8    included the presentation of some twelve witnesses, the presiding judge became ill and was unable to

9    continue. Exhibit 1, pp. 20-21.  Judge Michael Douglas substituted into the proceedings on

10   December 16, 1999.  Exhibit 82, p. 3.  Conceding that he was not familiar with the trial proceedings,

11   Judge Douglas recommenced the trial after having been briefed by counsel regarding the single

12   witness scheduled for that day.  *Id.* pp. 4-5.  The judge stated his intention to hear the testimony of

13   the witness, then suspend the hearing until December 20, 1999, and used the recess to familiarize

14   himself with the case.  *Id.*

15   On December 20, 1999, the proceedings continued with the judge making a record

16   that he had "reviewed the file in this case" and was "familiar with the Kelly matter."  Exhibit 84, pp.

17   10-11.  Later that day, upon conclusion of the prosecution's case-in-chief, Kelly sought an advisory

18   instruction to the jury that "the court deems the evidence insufficient to warrant a conviction."  *Id.*,

19   pp. 17-19.  Kelly argued that the testimony of witnesses Jennifer Diaz and De Quincy Taylor lacked

20   credibility warranting the instruction.  *Id.*, pp. 18-19.

21   Before ruling on the motion, the judge recessed for the day in order to consider the

22   motion.  *Id.,* pp. 23-24.  Transcripts of the two witnesses' testimony were prepared for the judge to

23   review.  Exhibits 79 and 80.  The following day, the judge stated on that record that he had reviewed

24   the testimony of Diaz and Taylor, he been  present during the testimony of Officer Mesinar, which

25   included the taped recorded statements of Kelly, and concluded that sufficient evidence had been

26

4

1   admitted to allow the matter to go to the jury without the requested advisory instruction.  Exhibit 87,

2   pp. 3-7.  Judge Douglas continued to preside over the remainder of the trial.

3          In Ground One, petitioner claims the substitute judge erred in not completely

4   reviewing the existing trial record before continuing the trial in violation of state law.

5          Under Nevada law, a substituting judge must certify that he has "familiarized himself

6   with the record of the trial.  *See* NRS 195.091.[2]  In considering this claim, the Nevada Supreme

7   Court determined that Judge Douglas had made himself sufficiently familiar with the proceedings to

8   preside over the limited issues to which the petitioner took exception.  Exhibit 127, p. 2.  The court

9   noted the record showed the judge had been briefed by counsel before hearing the initial witness and

10  that he had obtained and reviewed the pertinent witness transcripts before making a ruling on the

11  motion for the advisory instruction.  *Id.*  Finally, the court noted that there had been no objection

12  raised by the defendant at the time Judge Douglas substituted into the proceedings.  *Id.*

13         The Nevada Supreme Court is the final arbiter of Nevada State law and is entitled to

14  wide latitude in interpreting that law.  *Estelle v. McGuire,* 502 U.S. 2, 67-68 (1991).  Petitioner's

15  argument that the judge should have obtained and reviewed the transcripts of all twelve witnesses

16  before recommencing the trial is not supported by the statute itself or by the Nevada Supreme

17  Court's interpretation.

18         As noted, the judge reviewed the testimony referenced in counsel's arguments for the

19  requested advisory instruction and was present for the testimony of the police detective who obtained

20  the defendant's early statements to police.  Moreover, the judge stated affirmatively that he had

21

22      [2]

23         If by reason of death, sickness or other disability the judge before whom a jury
        trial has commenced in unable to proceed with the trial, any other judge
24      regularly sitting in or assigned to the court, upon certifying that he has
        familiarized himself with the record of the trial, may proceed with and finish the
25      trial.

26  Nevada Revised Statutes (NRS) § 175.091.

1   previously reviewed the file and felt he was sufficiently familiar with the matter to preside over the

2   balance of the trial.  Petitioner has not overcome his burden to show that the state court improperly

3   decided this claim due to either an objectively unreasonable factual determination or an objectively

4   unreasonable or contrary application of federal law.  Under 28 U.S.C. § 2254(d) no relief is

5   warranted on Ground One.

6                                   **Ground Four**

7          Ground Four is petitioner's claim that the trial court improperly denied his motion to

8   suppress his statements to police because they were involuntary and inadmissible under *Miranda*.[3]

9   Specifically, petitioner argues that he did not affirmatively waive his right to remain silent after

10  being given his *Miranda* warnings at the time of his original arrest, that he should have been

11  *Mirandized* again by Detective Mesinar before a recorded statement was taken from Kelly while he

12  was at the hospital for treatment of a head laceration received in the auto accident which preceded

13  his arrest, and, finally, that the third statement, recorded by Detective Mesinar only three hours later

14  at the police station in the presence of his mother and after being advised that he was not under arrest

15  and could leave the interview at any time, also required an independent *Miranda* warning and an

16  affirmative waiver.

17         Respondents argue that this claim is procedurally barred and that petitioner must

18  overcome that bar before the claim can be considered on its merits.  Respondents note that this claim

19  was presented by petitioner in his post-conviction petition, that the trial court found the claim to be

20  waived pursuant to NRS 34.810 and that the Nevada Supreme Court affirmed the trial court's denial

21  of the petition.  *See* Exhibit 159, p. 16.

22         Petitioner argues that the claim is not procedurally defaulted and that even if it is, the

23  ineffective representation that he received on appeal is cause for the default.

24

25  _____

26         [3] *Miranda v. Arizona,* 384 U.S. 436 (1966).

1      A federal court will not review a claim for habeas corpus relief if the state court's

2 decision rested on a state law ground that is independent of the federal question and if the ground is

3 adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

4      The *Coleman* Court stated the effect of a procedural default, as follows:

5      [i]n all cases in which a state prisoner has defaulted his federal claims
       in state court pursuant to an independent and adequate state procedural

6      rule, federal habeas review of the claims is barred unless the prisoner
       can demonstrate cause for the default and actual prejudice as a result of

7      the alleged violation of federal law, or demonstrate that failure to
       consider the claims will result in a fundamental miscarriage of justice.

8

9 *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

10     Ineffective assistance of counsel may satisfy the cause requirement to overcome a

11 procedural default.  *Murray*, 477 U.S. at 488.  However, for ineffective assistance of counsel to

12 satisfy the cause requirement, the independent claim of ineffective assistance of counsel must first be

13 presented to the state courts.  *Murray*, 477 U.S. at 488-89.

14     Petitioner presented his claim of ineffective assistance of appellate counsel to the

15 state courts, which considered them and found that they were without merit.  In conducting its

16 review of the claims, the Nevada Supreme Court also considered the merits of the underlying claims

17 - those which petitioner alleged his counsel should have brought on appeal.  *See* Exhibit 159, pp. 11-

18 12. Ground Four is on  such claim.  *Id.*  In its order of affirmance, the Nevada Supreme Court

19 discussed the hearing conducted prior to trial on Kelly's motion to suppress concluding that the

20 district court's finding "that Kelly's statements were voluntary is not completely untenable. [fn. 35:

21 *See, Elvik v. State,* 114 Nev. 883, 893, 964 P.2d 281, 288 (1998).]" *Id.*, at 12.

22     *Elvik,* requires a consideration of the totality of the circumstances in determining

23 whether a statement is voluntarily made.  This rule is the same as, rather than being contrary to or an

24 unreasonable application of the federal principles cited by petitioner.  *See* Reply, p. 14 *citing Fare v.*

25 *Michael C.,* 442 U.S. 707, 725 (1979).  Thus, the state's highest court, in conducting its evaluation

26

7

1   of petitioner's ineffective assistance of appellate counsel claims did not apply a rule that was

2   unreasonable or contrary to clearly established federal law.  The state court found that the claim

3   raised here as Ground Four was without merit.  This being the case, this Court need not consider

4   further the arguments of procedural default and cause and prejudice.  Ground Four shall be denied on

5   its merits.

6   **B.  Petitioner's Claims Of Ineffective Assistance Of Counsel**

7   To prove ineffective assistance of counsel, petitioner must prove (1) that his

8   attorney's actions were outside the wide range of professionally competent assistance, and (2) that

9   counsel's actions prejudiced him such that "there is a reasonable probability that, but for counsel's

10  unprofessional errors, the result of the proceeding would have been different." *Strickland v.*

11  *Washington*, 466 U.S. 668, 687-94 (1984).

12  **Ground 2: Kelly was denied his right to the effective assistance of counsel under
    the Sixth and Fourteenth Amendments to the United States Constitution when
    counsel failed to argue on appeal that since there was insufficient evidence to
13  prove that Kelly had the ability to control the pistol that killed Terry Dixon,
    there was insufficient evidence to enhance Kelly's sentence for committing the
14  crime while using a deadly weapon.**

15

16  The federal standard for determining the sufficiency of the evidence in a criminal case

17  is set forth in *Jackson v. Virginia,* 443 U.S. 307 (1979). Under *Jackson,* the court must establish that

18  after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

19  could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-319

20  (emphasis in original).

21  In *Anderson v. State,* 95 Nev. 625, 600 P.2d 241 (1979) the Nevada Supreme Court

22  set out the necessary requirements for subjecting a defendant who aids and abets to the sentence

23  enhancement for the use of a deadly weapon. The court stated,

24  the possession necessary to justify statutory enhancement may be actual or
    constructive; it may be exclusive or joint. Constructive or joint possession
25  may occur only where the unarmed participant has knowledge of the other
    offenders being armed, and where the unarmed offender has, as here, the

26

8

1
2
> ability to exercise control over the firearm. It is noteworthy that during the change of plea proceedings, appellant acknowledged that the firearm was used to rob the victim.

3  *Id.* at 630; *Key v. State*, 563 S.W.2d 184, 186 (Tenn. 1978) (defendant apparently did not know his

4  accomplice had a firearm).  Constructive control includes the right to control the weapon, not

5  necessarily requiring exclusive control. *See, Glispey v. Sheriff, Carson City,* 89 Nev.221, 223, 510

6  P.2d 623, 624 (1973); *cf. Alsup v. State,* 87 Nev. 500, 489 P.2d 679 (1971)(circumstantial evidence

7  enough to connect defendant to weapon).

8       Kelly argues that there was insufficient evidence admitted at trial showing he had

9  control over the weapon.  Contrary to this assertion, there was evidence showing that Kelly had

10  previously possessed the .22 caliber pistol used to kill the victim, that he was a participant in the

11  planning of the robbery, including having knowledge of a plan to shoot the victim if he resisted, that

12  he was present at the time the robbery and killing occurred, and that he threw the weapon out of the

13  truck window once police started to pursue Kelly and Sean Dixon.  *See* Exhibits 78, pp. 69, 73-74,

14  76 (testimony of Jennifer Diaz), pp. 135-136 (testimony of Officer Michael Blaskko); Exhibit 80, pp.

15  7, 11-12, 15-16, 31-34 (testimony of De Quincy Taylor); Exhibit 82, pp. 17-18, 22-23, 30-31

16  (testimony of Detective Mesinar).  This evidence ties Kelly closely with the .22 caliber weapon and

17  demonstrates that he had exercised controlled over it during the course of events.

18       The Nevada Supreme Court considered Kelly's claim that appellate counsel should

19  have argued insufficient evidence on appeal and determined that there was substantial evidence to

20  support the jury verdict and Kelly had not shown that there was a reasonable probability that such a

21  claim would have been successful on appeal.  Exhibit 159, p. 15.

22       Considering Nevada law on constructive possession against the evidence presented at

23  trial that Kelly had, in fact, fully participated in the planning and execution of the robbery resulting

24  in murder, including having had possession and control of the weapon before the killing and just

25
26

1  prior to his arrest, the Nevada Supreme Court's determination of this claim is neither contrary to or

2  unreasonable in its application of federal law.

3           **Ground 3: Kelly was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel when counsel failed to properly investigate the case.**

4

5           Counsel has "a duty to make reasonable investigations or to make a reasonable

6  decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. More

7  specifically, "a particular decision not to investigate must be directly assessed for reasonableness in

8  all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

9           Kelly contends that counsel was ineffective because he failed to investigate.

10  Petitioner notes that his co-defendants' counsel engaged investigators for trial preparation, but his

11  counsel did not.  He further complains that counsel did not interview the co-defendants, including

12  Sean Dixon, the son of the victim.  Dixon had plead guilty prior to trial and was available to counter

13  testimony that Kelly had fired the shot that killed the victim.  *See* Exhibit 176.

14           To counter respondents' assertion that he does not provide sufficient facts to support

15  his claim, Kelly presents the affidavits of Ed Heddy, an investigator for the office of the Federal

16  Public Defender.[4]  One affidavit identifies numerous avenues of investigation available to counsel

17  which were not pursued.  *See* Exhibit 177.  Heddy suggests that additional interviews of various

18  witnesses and participants may have provided testimony at trial to support Kelly's assertion that he

19  did not have a weapon at the time of the robbery and murder and that he did not shoot the gun that

20  killed the victim.

21

22

23           [4] Respondents argue these affidavits should be stricken pursuant to Rule 7 of the Rules Governing Section 2254 Cases and 28 U.S.C. § 2254(e)(2) because Kelly has not shown that he did not
24  fail to develop the facts in state court.  Kelly counters that he was denied counsel or an evidentiary hearing during his post-conviction proceedings, despite specific requests for this assistance. These
25  requests demonstrate that Kelly was diligent in attempting to develop the facts to support his claims. *Williams v. Taylor*  529 U.S. 420, 432 (2000). The documents shall not be stricken.

26

1          The Ninth Circuit has said that "[a] lawyer who fails to adequately investigate, and to

2    introduce into evidence, records that demonstrate his client's factual innocence, or that raise

3    sufficient doubt as to that question to undermine confidence in the verdict, renders deficient

4    performance." *Hart v. Gomez,* 174 F.3d 1067, 100 (9th Cir. 1999); *See also, Sanders v. Ratelle,* 21

5    F.3d 1446 (9th Cir. 1994)(counsel's failure to investigate or introduce exculpatory evidence

6    constitutes deficient performance under *Strickland*).

7          The Nevada Supreme Court considered this claim during post-conviction review.

8    The court concluded that Kelly had not shown that counsel was deficient in this regard because he

9    could not demonstrate the required prejudice.  The court stated

10              . . .Kelly claims that counsel was ineffective for failing to investigate whether
               Kelly was armed with a gun when the incident took place. The State presented
11              two witnesses who testified that Kelly did have a gun a few days prior to the
               incident, and one witness who testified that Kelly was armed with a gun during
12              the robbery and murder.  Moreover, because the State proceeded under the
               alternate legal theories of aiding and abetting, conspiracy, felony murder, as well
13              as the theory that Kelly was the shooter, it was unnecessary for the State to prove
               that he had possession of a gun.  Therefore, Kelly failed to show that the defense
14              was prejudiced.

15              . . .Kelly claimed that counsel should have investigated additional defenses and
               any information in possession of the prosecution.  These claims are unsupported
16              by specific factual allegations, which would, if true, entitle Kelly to relief.
               Therefore Kelly failed to establish that counsel was ineffective in this regard.

17
               . . .Kelly claims that counsel was ineffective for failing to interview witnesses.
18              Specifically, Kelly argued that counsel should have interviewed: (1) Taylor and
               Dunhame, who would have corroborated that Kelly was not armed, was not the
19              shooter, and did not take anything from Mr. Dixon's apartment; (2) Carrie Booth,
               who would have undermined the testimony of Jennifer Jensen Diaz; and (3) Elliot
20              Richard Cerezo, Michael David Chaddock, James E. Brown, Mark House, and
               Shawn Payne, who would have testified that they had heard Kelly's co-defendant
21              Sean Dixon repeatedly state that he intended to shoot and kill Mr. Dixon.  Kelly's
               claims regarding Taylor, Dunhame and Booth are belied by the record.  Both
22              Taylor and Dunhame stated under oath that Kelly was armed.  Neither testified
               that Kelly was the shooter or that he took anything from the victim's apartment.
23              Booth was called by the State and her testimony at trial was consistent with that of
               Diaz.  Both Booth and Diaz also testified that they had heard Kelly participated in
24              a conversation in which it was discussed that the group would kill the victim if he
               resisted during the robbery. Regarding the other potential witnesses, Kelly failed
25              to show that had the jury been presented with evidence that Sean had previously

26

                                              11

1   stated he wished to kill his father it would have changed the outcome of the trial.
    Therefore, Kelly did not show that the defense was prejudiced.

2

3   Exhibit 159, pp. 5-6.

4           The state courts' rejection of this claim of ineffective assistance of counsel did not

5   result from an unreasonable application of clearly established federal law.  Nor did the state court

6   rulings in this regard result in a decision that was based on an unreasonable determination of the

7   facts in light of any evidence presented in the state court proceeding.  Petitioner is not entitled to

8   relief under 28 U.S.C. § 2254(d) on this claim.

9                           **Ground 5B**: **Kelly was denied his right to the effective assistance of
                            counsel as guaranteed by the Sixth and Fourteenth Amendments to the**
10                          **United States Constitution when**

11              **(b)      counsel failed to present any witnesses or other evidence at Kelly's
                           sentencing hearing.**

12

13  _____ Kelly complains that counsel should have presented evidence at his sentencing

14  hearing regarding his dysfunctional family background, history of poly-substance abuse and mental

15  health problems.

16          At the state court level, petitioner did not support this claim with specifics.  *See*

17  Exhibit 159, p. 10 ("Kelly did not specify what mitigating circumstances should have been

18  presented.") In the Second Amended Petition filed in this action, Kelly identifies a report prepared

19  by Dr. Mortillaro  on counsel's pretrial request for a psychological examination.  That report

20  discussed Kelly's family background and the other factors which might have been used in mitigation

21  at sentencing.  Kelly complains this report and its contents were not used to their potential to reduce

22  the sentence imposed.

23          At sentencing, Dr. Mortillaro and Nancy Hunterton were present to testify.  Exhibit

24  92, p. 1, 12.  However, after petitioner made a lengthy statement about the flaws in his trial, counsel

25  summarized the witnesses' proposed testimony rather than have them take the stand.  *Id.,*  p.12.

26

                                                12

1   Counsel then argued for the court to impose "the most lenient possible sentence." *Id.*  Thereafter, the

2   court sentenced petitioner to the most lenient sentence available under Nevada law for the

3   convictions he received.  Petitioner has not shown that he was actually prejudiced by counsel's

4   performance at sentencing.

5           The state courts' rejection of this claim of ineffective assistance of counsel did not

6   result from an unreasonable application of clearly established federal law.  Nor did the state court

7   rulings in this regard result in a decision that was based on an unreasonable determination of the

8   facts in light of any evidence presented in the state court proceeding.   Kelly is not entitled to relief

9   under 28 U.S.C. § 2254(d) on this claim.

10          **Ground 6:** **Kelly was denied his right to effective assistance of counsel when
    counsel failed to argue on appeal that he was denied his right to due process as
11   guaranteed by the Fourteenth Amendment to the United States Constitution
    because the prosecutor presented two factually conflicting theories of
12   prosecution.**

13          Kelly claims that his counsel was ineffective for failing to argue on appeal that the

14   State improperly presented two factually conflicting theories of prosecution. He asserts that during

15   the investigation and early prosecution, it was apparent that Kelly was not considered to be the

16   shooter.  However, while cross-examining Kelly, the prosecutor sought to implicate Kelly as the

17   actual shooter.

18          Kelly argues that the State used inconsistent, irreconcilable theories to secure

19   convictions against Kelly and Lamar Alexander in separate prosecutions for the same offense arising

20   out of the same event.  *See* Reply, p. 24.  Kelly relies on Supreme Court of California (citing the

21   Ninth Circuit Court of Appeals) and Eighth Circuit Court of Appeals holdings in contending that

22   such prosecution violates due process.  *See, e.g., In Re Sakarias*, 25 Cal. Rptr.3d 265, 279 (2005);

23   *Smith v. Groose,* 205 F.3d 1045, 1052 (8th Cir. 2000).

24          While these cases do present judicial opinions that dual prosecutions based on

25   factually inconsistent theories may deny due process, the opinions do not constitute "clearly

26

                                                    13

established federal law as determined by the United States Supreme Court" as required.  *See* 28 U.S.C. § 2254(d)(1).

This claim  was denied by the Nevada Supreme Court on post-conviction review. Exhibit 159, p. 14.  The court did not misapply federal law and their factual findings were not unreasonable. Petitioner is not entitled to relief under 28 U.S.C. § 2254(d) on this claim.

**IV.**      **Conclusion**

Petitioner has failed to demonstrate that the state court's determination of his claims warrant relief under 28 U.S.C. § 2254(d).  Although he has requested an evidentiary hearing, he has not shown what facts might be developed at such a hearing and he has already supplemented the record with the affidavits of Ed Heddy and Lamar Alexander.  No hearing is warranted.

**IT IS THEREFORE ORDERED** that the Second Amended Petition for Writ of Habeas Corpus (docket #31) in this action is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall **ENTER JUDGMENT** accordingly.

Dated this   27th   day of December, 2006.

_____
UNITED STATES DISTRICT JUDGE

14